UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEILA MATTHEWS,
EUGENE MATTHEWS,

      Plaintiffs,                      CIVIL ACTION NO. 10-13740

      v.                             DISTRICT JUDGE STEPHEN J. MURPHY, III

MORTGAGE ELECTRONIC           MAGISTRATE JUDGE MARK A. RANDON
REGISTRATION SYSTEMS, INC.,
FEDERAL NATIONAL
MORTGAGE ASSOCIATION,

      Defendants.
_____/

**REPORT AND RECOMMENDATION GRANTING DEFENDANTS'
MOTION TO DISMISS, OR ALTERNATIVELY FOR SUMMARY
JUDGMENT (DKT. NO. 5) AND DENYING PLAINTIFFS' MOTION
FOR LEAVE TO FILE FIRST AMENDED COMPLAINT (DKT. NOS. 6, 7)**

Before the Court are Defendants Mortgage Electronic Registration Systems, Inc. and Federal National Mortgage Association's ("Defendants") motion to dismiss, or alternatively for summary judgment (Dkt. No. 5) and Plaintiffs' motion to for leave to file an amended complaint. (Dkt. Nos. 6, 7). Plaintiffs Sheila and Eugene Matthews allege that the foreclosure by advertisement of their residence was improper and the subsequent Sheriff's sale, therefore, void. Since the undersigned finds, as a matter of law, that Defendants did not violate Michigan's mortgage foreclosure by advertisement statute, IT IS RECOMMENDED that Defendants' motion be GRANTED, Plaintiffs' motion for leave to file a first amended complaint DENIED, and Plaintiffs' lawsuit dismissed with prejudice.

**I.   FACTUAL BACKGROUND**

On July 31, 2006, Plaintiffs executed a mortgage and note in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for lender Quicken Loans, Inc. (Dkt. No. 1, Ex. #2, Ex. B) to secure a $103,000.00 loan to purchase a home located at 20195 Tracey in Detroit, Michigan. On June 20, 2009, the mortgage and note were assigned to OneWest Bank FSB, and recorded in the Wayne County Register of Deeds on July 9, 2009. (Dkt. No. 5, Ex. 3). Plaintiffs defaulted on their loan, and OneWest Bank FSB subsequently initiated a foreclosure by advertisement. (Dkt. No. 1, Ex. #2, Ex. A). The advertised notice, provided, in pertinent part:

> Default has been made in the conditions of a mortgage made by **Sheila Matthews**, married woman, and **Eugene Matthews**, her husband, to **Mortgage Electronic Registration Systems, Inc.,** as nominee for lender and lender's successor and/or assigns, Mortgagee, **dated July 31, 2006 and recorded August 15, 2006** in Liber 45152, Page 1608, Wayne County Records, Michigan. **Said mortgage is now held by OneWest Bank FSB by assignment.** There **is claimed to be due at the date hereof the sum of One Hundred Eleven Thousand Five Hundred Thirty-Eight and 99/100 Dollars ($111,538.99)** including interest at 8.375% per annum. Under the power of sale contained in said mortgage and the statute in such case made and provided, notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public vendue at the Courtroom 1607, Wayne County Circuit Court Tower in the Coleman A. Young Municipal Center in Detroit in Wayne County, Michigan at 1:00 p.m. on JULY 22, 2009. Said premises are **located in the City of Detroit, Wayne County, Michigan, and are described as Lot 161, Darby Subdivision,** as recorded in Liber 38, Page 85 of Plats. The **redemption period shall be 6 months** from the date of such sale . . . (Emphasis added).

Federal National Mortgage Association ("FNMA") purchased the property at the foreclosure sale on November 18, 2009, subject to Plaintiffs' right to redeem within 6 months. (Dkt. No. 1, Ex. #2, Ex. A). Plaintiffs did not redeem the property.

After the expiration of the redemption period, Defendant FNMA commenced a state court eviction action in 36th District Court. On June 11, 2010, a hearing was held and Defendant, FNMA

was granted possession of the property. In response, plaintiffs filed the instant suit in the Wayne County Circuit Court, which Defendants then removed to this Court.

Plaintiffs' Complaint contains four counts: (1) "Allegations Against MERS and Federal National Mortgage Association Resulting in a Causes of Action and Requests for Relief," (2) "Allegations of Material Breach of Contract Against MERS Resulting in a Cause of Action and Requests for Relief," (3) "Slander of Title," (4) "Equitable Relief to Set Aside Sheriff's Deed." Plaintiffs' seek leave to amend their complaint to add two additional defendants (Quicken Loans, Inc. and OneWest Bank FSB) and allege the following nine counts: (1) "Affirmative Action Under UCC 9-625," (2) "Violations and Breach of MCL 600.3204 et. al," (3) "Civil RICO," (4) "Allegations Against FNMA, MERS, and OneWest Resulting in a Causes of Action and Requests for Relief," (5) "Slander of Title," (6) "Fair Debt Collection Practices Act," (7) "Equitable Relief to Set Aside Sheriff's Deed," (8) "Unjust Enrichment Allegations Against FNMA," and (9) "Breach of Contract Allegations Against OneWest." Since Plaintiffs' proposed amended complaint incorporates all of the original complaint allegations, the undersigned reviews the proposed pleading to determine both Defendants' dispositive motion and propriety of granting leave to amend.

**II.   ANALYSIS**

   *A.   Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) authorizes this Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *See League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To withstand a motion to dismiss, however, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations, accepted as true, in the complaint "must be enough to raise a right to relief above the speculative level," and "state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937, 1949 (2009).

The purpose of the summary judgment rule "is to isolate and dispose of factually unsupportable claims or defenses ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Therefore, the entry of a summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When assessing a request for the entry of a summary judgment, the Court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

In order for a dispute to be genuine, it must contain evidence upon which a jury could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). Thus, a court must recognize that the moving party has the initial obligation of identifying those portions of the record which demonstrate the absence of any genuine issue of a material fact. *See Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Anderson*, 477 U.S. at 256. The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the

existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. Plaintiffs' Claims

At the outset, it should be noted that Plaintiffs' claims fail because – once the redemption period following foreclosure of a property has expired – the former owner's rights in and title to the property are extinguished. At that point, the former owner loses standing to assert claims with respect to the property. Indeed, in *Piotrowski v. State Land Office Board*, 302 Mich. 179 (1942), the Michigan Supreme Court held that the mortgagors: (1) had "lost all their right, title, and interest in and to the property at the expiration of their right of redemption;" and (2) could not assert the right of parties "having an interest in the land" to meet the highest bid at the scavenger sale. *Id*. at 185. The standard under *Piotrowski* has been applied by Michigan courts – and by federal courts applying Michigan law – to bar former owners from making any claims with respect to foreclosed property after the end of the redemption period. *See Stein v. U.S. Bancorp*, 2011 WL 740537 (E.D. Mich. Feb. 24, 2011); *Overton v. Mortg. Elec. Registration Sys*., 2009 WL 1507342 (Mich. App. May 28, 2009) (dismissing former owner's claim of fraud where redemption period expired one month after litigation was initiated); *see also, e.g., Moriarty v. BNC Mortg., Inc*., 2010 WL 5173830 (E.D. Mich. Dec.15, 2010) (dismissing action for declaratory judgment voiding foreclosure proceedings). Thus, Plaintiffs' do not have standing to bring the claims asserted in this suit. Furthermore, Plaintiffs' claims fail for additional reasons:

#### (1) Affirmative Action Under UCC 9-625

Plaintiffs challenge the foreclosure by advertisement of their property by asserting that MERS and OneWest Bank FSB failed to have a valid security interest in the property and, as a result, violated Michigan's foreclosure by advertisement statute (M.C.L. 600.3201, et. seq.). Plaintiffs

voluntarily entered into a mortgage agreement with MERS as nominee for lender Quicken Loans, Inc. on July 21, 2006 (Dkt. No. 1, Ex. #2, Ex. B). On June 20, 2009, MERS assigned their interest to OneWest Bank FSB with this assignment being recorded in the Wayne County Register of Deeds on July 9, 2009. (Dkt. No. 5, Ex. 3). As will be further discussed below, the ability to foreclose by advertisement extends beyond the owner of the indebtedness and, therefore, Defendants were within their rights to pursue foreclosure by advertisement and such a nonjudicial foreclosure is proper when the requirements of M.C.L. 600.3201, et. seq. are followed.

> M.C.L. 600.3201 states that:
>
>> Every mortgage of real estate, which contains a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement, in the cases and in the manner specified in this chapter.

Plaintiffs' mortgage contained a power of sale which stated:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property.

(Dkt. No. 1, Ex. #2, Ex. B). Accordingly, MERS assigned their interest OneWest Bank FSB who was entitled to foreclose Plaintiffs' property by advertisement upon default.

### (2) Violations and Breach of MCL 600.3204 et. al

Plaintiffs attempt to find some discrepancy in the mortgage agreement between the terms "nominee" and "mortgagee." Plaintiffs argue that MERS is only a "putative nominee" and therefore does not have the right to exercise the power of sale which is allegedly only available to the "holders" of the mortgage. M.C.L. 600.3204(1)(d) requires that "[t]he party foreclosing the mortgage is either the owner of the indebtedness *or* of an interest in the indebtedness secured by the mortgage

-6-

*or* the servicing agent of the mortgage." (Emphasis added). Several Michigan federal district court cases have examined the authority of MERS as nominee of the lender to foreclose under M.C.L. 600.3204, and found that such authority is proper. *See Corgan v. Deutsche Bank Nat'l Trust Co.*, 2010 WL 2854421 (W.D. Mich. 2010); *English v. Flagstar Bank*, 2009 WL 3429674 (E.D. Mich. 2009); *Hilmon v. MERS*, 2007 WL 1218718 (E.D. Mich. 2007); *United States v. Garno*, 974 F.Supp 628, 633 (E.D. Mich. 1997). Since Plaintiffs' mortgage with Quicken Loans, Inc. granted MERS authority to foreclose, Plaintiffs cannot now claim that MERS lacks such authority. MERS, as the nominee of the lender and mortgagee was a proper party to initiate foreclosure proceedings, as it exercises the same general rights and powers as any mortgagee. Plaintiffs offer no evidence or basis for this Court to reach a conclusion any different than those reached in *English*, *Hilmon*, and *Corgan*. Quite simply, MERS, as the nominee of the lender and mortgagee was a proper party to initiate foreclosure proceedings or assign the right to do so to a third party.

Plaintiffs also argue that MERS has materially breached the mortgage agreement basing this assertion on the allegation that MERS is not the mortgagee to whom the property was mortgaged for three following "economic" reasons: (1) MERS does not fund any loans, (2) no homeowners promise to pay MERS any money, and (3) MERS is never entitled to any proceeds from a potential foreclosure sale. As already addressed, by the express terms of the mortgage agreement, MERS possesses the right to foreclose on the property and to exercise any or all of their interests as nominee for the lender, Quicken Loans, Inc. Therefore, as a matter of law, MERS has not materially breached the mortgage agreement by assigning the right to foreclose on the property by advertisement.

### (3)    Racketeer Influenced and Corrupt Organization Act

Plaintiffs also reference the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 ("RICO"). To state a RICO claim, plaintiffs must plead the following elements: (1) conduct

(2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Therefore, "[t]o establish a RICO violation under § 1962(c), a plaintiff must allege that the RICO enterprise engaged in a 'pattern of racketeering activity' consisting of at least two predicate acts of racketeering activity occurring within a ten-year period." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006). "The alleged predicate acts may consist of offenses 'which are indictable' under any number of federal statutes," including the mail fraud statute, 18 U.S.C. § 1341. *Id*.

In making their RICO claim, Plaintiffs allege that the recording of false documents with the Wayne County register of deeds deprived them of their interest in the property. In addition, Plaintiffs allege that both Defendants' lawyers, Orlans Associates, P.C. ("Orlans"), and OneWest Bank FSB used the United States Postal Service to commit mail fraud. Similar RICO claims have been brought before the court in prior cases and have been found to be unmeritorious. *See Geter v. MERS*, 2011 WL 589414 (E.D. Mich. 2011); *Austin v. Countrywide Home Loans, Inc.*, 2008 WL 3833269 (E.D. Mich. 2008). As in *Moon*, Plaintiffs have failed to allege any "facts suggesting that the scheme would continue beyond the Defendants accomplishing their goal of terminating" Plaintiffs interest in the property. *Moon*, 465 F.3d at 725. Plaintiffs' claims of mail fraud against Orlans are similar to those seen in *Austin* and lack merit since Orlans was representing their clients in a proper legal action evidenced by the State Court's grant of possession of the property to FNMA after Plaintiffs failed to redeem within the six-month redemption period. *See Austin*, 2008 WL 3833269, *6-7. Other than Plaintiffs' legal conclusions, there is no evidence to support any improper activity by the Orlans or OneWest Bank FSB. This claim must be dismissed because "the origination and servicing of a single loan 'does not bear the markings of the "long-term criminal conduct" about which Congress

was concerned when it enacted RICO.'" *Geter*, 2011 WL 589414, at *4 (quoting *Moon*, 465 F.3d at 725-26).

### (4) Allegations Against FNMA, MERS and OneWest Resulting in a Causes of Action and Requests for Relief

Plaintiffs argue that Defendants had no financial interest in the property and, therefore, had no power to sell as "nominee" for the lender. Plaintiffs also contend that Defendants lacked the legal right to foreclose on the property due to alleged irregularities in the chain of title. Michigan's foreclosure by advertisement statute, M.C.L. 600.3201, et. seq., provides the requirements by which such a foreclosure is to take place.

Contrary to Plaintiffs' assertions, the ability to foreclose by advertisement extends beyond the owner of the indebtedness. The statute authorizes foreclosure by "either the owner of the indebtedness *or* of an interest in the indebtedness secured by the mortgage *or* the servicing agent of the mortgage." M.C.L. 600.3204(1)(d). (Emphasis added). In addition, Plaintiffs expressly agreed in their mortgage agreement that MERS held only legal title as nominee for the lender, Quicken Loans, Inc. The mortgage agreement reads, in pertinent part:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender ...."

Plaintiffs cannot now argue that MERS does not hold the rights Plaintiffs expressly and willingly granted MERS in the mortgage agreement. *See English v. Flagstar Bank*, 2009 WL 3429674 (Oct. 21, 2009 E.D. Mich.).

Defendants' notice of foreclosure also complied with M.C.L. 600.3212, which requires:

> Sec. 3212. Every notice of foreclosure by advertisement shall include all of the following:
>
> (a) The names of the mortgagor, the original mortgagee, and the foreclosing assignee, if any.
>
> (b) The date of the mortgage and the date the mortgage was recorded.
>
> (c) The amount claimed to be due on the mortgage on the date of the notice.
>
> (d) A description of the mortgaged premises that substantially conforms with the description contained in the mortgage.
>
> (e) For a mortgage executed on or after January 1, 1965, the length of the redemption period as determined under section 3240.

The advertised notice of foreclosure included each of the requirements outlined in Section 3212 above, and nowhere in this section is the current owner of the mortgage required to be included in the advertisement.

Plaintiffs attempt to challenge the foreclosure by advertisement of the property by asserting that there exist irregularities in the chain of title and that Defendants lacked the right to foreclose as a result. M.C.L. 600.3204(3), the portion of Michigan's foreclosure by advertisement statute which addresses record chain of title, states:

> If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage *to the party foreclosing the mortgage*. (Emphasis added)

Since MERS, the original mortgagee, was not the party foreclosing the mortgage by advertisement, M.C.L. 600.3204(3) requires a record chain of title in order to evidence the assignment of the mortgage to the foreclosing party, OneWest Bank FSB, in the instant case. The assignment of the mortgage to OneWest Bank FSB occurred on June 20, 2009 and was recorded on July 9, 2009 at the

Wayne County Register of Deeds. The Sheriff's sale did not take place until November 18, 2009 and therefore a record chain of title existed prior to the date of sale. Accordingly, Defendants have complied with requirements set forth in Michigan's foreclosure by advertisement statute and no irregularities in the chain of title exist which would effect Defendants' legal right to foreclose. *See Stein v. U.S. Bancorp*, 2011 WL 740537 (E.D. Mich. Feb. 24, 2011); *Livonia Properties Holdings LLC. v. 12840-12976 Farmington Road Holdings, LLC*, 2010 WL 4275305 (6th Cir. Oct. 28, 2010); *see also e.g., Gathing v. MERS, Inc.*, 2010 WL 889945 (E.D. Mich. Mar. 10, 2010) (rejecting borrower's claim that bank lacked standing to foreclose where assignment was recorded after first publication of foreclosure notice, and noting that, under the current version of § 600.3204(3), record chain of title only needs to exist as of the date of the foreclosure sale).

### (5) Slander of Title

Plaintiffs aver that the Sheriff's deed is void and a slander of title claim arises based on the allegation that MERS does not have possession of the original promissory note. As discussed above, Defendants have complied with Michigan's foreclosure by advertisement statute and accordingly the Sheriff's deed is valid. Plaintiffs have neglected to cite any portion of Michigan's foreclosure by advertisement statute which requires the production of the original promissory note to make such a foreclosure proper.

### (6) Fair Debt Collection Practices Act

Plaintiffs also assert that Defendants' lawyers, Orlans Associates, P.C., violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et. seq. This claim also fails. "The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et. seq., imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, 1606 (2010). The Supreme Court has held that law firms may qualify as debt

collectors for purposes of the FDCPA. *See Heintz v. Jenkins*, 514 U.S. 291 (1995); *see also Jerman*, 130 S.Ct. 1605, 1618 (2010). A plaintiff pursuing a claim under the FDCPA, however, bears the burden of establishing by proof that the defendant is a debt collector. *See Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60 (2nd Cir. 2004); *Passa v. City of Columbus*, 2010 WL 3825387, at *5 (S.D. Ohio Sept. 28, 2010). A "debt collector" includes people "who regularly collects or attempts to collect, directly or indirectly, debts owed [to] ... another." 15 U.S.C. § 1692a(6). The statute excludes certain persons from the definition of "debt collector:"

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (I) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(F). Several courts in this District have held that "[a]ttorneys who merely represent creditors and do not send demand letters to debtors do not act as 'debt collectors' under the FDCPA." *Claxton v. Orlans Associates, P.C.*, 2010 WL 3385530 at * 3 (E.D. Mich. Aug.26, 2010) (citing *Waller v. Life Bank*, 2007 WL 3104917 (E.D. Mich. Oct.22, 2007)) (holding that "attorneys who represent debt collectors and do not send demand letters to debtors" are not governed by the FDCPA); *see also TerMarsch v. Fabrizio & Brook, P.C.*, 2006 WL 3313744 (E.D. Mich., Nov. 15, 2006) (defendant attorney and law firm who instituted nonjudicial foreclosure proceedings and never sent a demand letter were granted dismissal because they were retained to foreclose a mortgage and were not debt collectors); *McCall v. GMAC Mort. Corp.*, 2007 WL 1201535 (E.D. Mich. April 6, 2007) (uncontested that the defendant, Orlans Associates, P.C., was not a debt collector). In the pursuit of a foreclosure by advertisement for OneWest Bank FSB, Orlans was not acting as a "debt collector" as defined by the FDCPA. *See Gathing v. MERS*, 2010 WL 889945 (W.D. Mich. Mar. 10,

2010) (defendants not debt collectors where they assisted in non-judicial foreclosure for bank); *Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003) (court held that a party enforcing a security interest, such as an agency repossessing vehicles, "falls outside the ambit of the FDCPA for all purposes, except for the purposes of § 1692f(6)").

Even though Defendants are not "debt collectors" as defined by the FDCPA, under *Montgomery*, a person enforcing a security interest through nonjudicial action cannot be subject to liability under FDCPA unless that person violates § 1692f(6). Plaintiffs argue that Orlans violated section 1692f(6) of the FDCPA "by threatening to interfere with the business interests of the Plaintiffs, where no present right to possession existed as collateral through an enforceable security interest." (Dkt. No. 6-7). Section 1692f(6) prohibits a person enforcing a security interest from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if:

- (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
- (B) there is no present intention to take possession of the property; or
- (C) the property is exempt by law from such dispossession or disablement.

The record does not support a 1692f(6) claim against the Defendants arising from the nonjudicial foreclosure of Plaintiffs' property. Defendants commenced foreclosure proceedings on June 22, 2009, two days after MERS assigned Plaintiffs' mortgage to OneWest Bank FSB. (Dkt. No. 5, Ex. 3-4). As discussed above, the foreclosure notice complied with the requirements set forth in M.C.L. 600.3212 and Plaintiffs have presented no evidence to contest the fact that their mortgage was in default on that date.

### (7) Equitable Relief to Set Aside Sheriff's Deed

Plaintiffs once again argue that the Sheriff's sale was void and that it should be set aside restating many of the allegations already discussed above. Plaintiffs argue that MERS cannot be both "mortgagee" and "nominee" and that MERS does not have the power to foreclose on the property. Since MERS has complied with Michigan's foreclosure by advertisement statute and the mortgage agreement expressly granted such rights to MERS, the foreclosure was proper and no equitable relief is warranted.

### (8) Unjust Enrichment Allegations Against FNMA

"The doctrine of unjust enrichment provides an equitable remedy imposed to prevent injustice." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003) (internal quotes omitted). A properly pleaded claim for unjust enrichment must include allegations that "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant knew of such benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Id*. at 501 (internal quotes omitted).

Plaintiffs' claim for unjust enrichment should be rejected. The amended complaint pleads the requisite elements of unjust enrichment in a conclusory fashion and Plaintiffs' base their argument essentially on the assertion that the foreclosure by advertisement was improper. Once again, Plaintiffs argue that FNMA was not a good faith purchaser and MERS did not own the mortgage for Plaintiffs' property. As discussed above, the ability to foreclose by advertisement extends beyond the owner of the indebtedness. In addition, since Michigan's foreclosure by advertisement statute was adhered to, the Sheriff's deed is valid and FNMA was a good faith purchaser of the property.

### (9) Breach of Contract Allegations Against OneWest

Plaintiffs allege that OneWest Bank FSB "failed to send Plaintiffs a notice of default or Notice with intent to accelerate the mortgage" and was therefore "in breach of the agreement as defaulting Servicer." (Dkt. No. 6-7). To state a breach of contract claim under Michigan law, a plaintiff must first establish the elements of a valid contract. *See Pawlak v. Redox Corp.*, 182 Mich. App. 758 (1990). The elements of a valid contract in Michigan are 1) parties competent to contract, 2) a proper subject matter, 3) a legal consideration, 4) mutuality of agreement, and 5) mutuality of obligation. *Thomas v. Leja*, 187 Mich. App. 418 (1990). Once a valid contract has been established, a plaintiff seeking to recover on a breach of contract theory must then prove by a preponderance of the evidence the terms of the contract, that the defendant breached the terms of the contract, and that the breached caused the plaintiff's injury. *See Platsis v. E.F. Hutton & Co., Inc.*, 642 F. Supp. 1277, 1309 (W.D. Mich. 1986). Plaintiffs have failed to properly plead a breach of contract claim. Plaintiffs have provided no specific contract provision or identifiable term breached by the Defendants and have pled no facts showing breach of their mortgage agreement. *See Jarbo v. BAC Home Loan Servicing*, 2010 WL 5173825 (E.D. Mich. Dec. 15, 2010).

Furthermore, the Michigan Supreme Court has stated the law that is dispositive of such claims:

> Foreclosure sales by advertisement are defined and regulated by statute. Once the mortgagee elects to foreclose a mortgage by this method, the statute governs the prerequisites of the sale, notice of foreclosure and publication, mechanisms of the sale, and redemption.

*Senters v. Ottawa Savings Bank, FSB*, 442 Mich. 45, 50 (1993). As already discussed, Defendants have followed Michigan's foreclosure by advertisement statute (M.C.L. 600.3201, et. seq.) and notice was provided in accordance with the requirements set forth in M.C.L. 600.3212.

**C. Leave to Amend Should be Denied.**

Pursuant to Fed. R. Civ. P. 15(a)(2), a party may amend its pleading by leave of the court and the court "should freely give leave when justice so requires." However, the grant of leave to amend is not a foregone conclusion. Appropriate factors to consider in determining whether to permit an amendment include: "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and the futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). Amendment is futile when the amendment is subject to dismissal under Fed. R. Civ. P. 12(b)(6), that is, when it fails to state a claim on which relief may be granted. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000); *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 307 (6th Cir. 2000).

Since each of the counts in Plaintiffs' proposed amended complaint fail as a matter of law, leave to amend should be denied as futile.

### III. CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that Defendants' motion to dismiss, or alternatively for summary judgment be **GRANTED**, Plaintiffs' motion for leave to amend their complaint **DENIED**, and Plaintiffs' lawsuit **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not

preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: April 5, 2011

### CERTIFICATE OF SERVICE

*I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 5, 2011.*

S/Melody R. Miles
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*
